**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2434-20

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

TAQUAN D. FLOYD,

     Defendant-Appellant.

_____

> Submitted May 2, 2022 – Decided July 7, 2022
>
> Before Judges Messano and Enright.
>
> On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 13-08-1128.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Andrew R. Burroughs, Designated Counsel, on the brief).
>
> Yolanda Ciccone, Middlesex County Prosecutor, attorney for respondent (Joie D. Piderit, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Taquan D. Floyd appeals from the February 11, 2021 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

I.

Because the underlying facts in this matter were outlined at length in our decision resulting from defendant's direct appeal, State v. Floyd, No. A-1646-15 (App. Div. Apr. 12, 2018), we provide only a summary of the pertinent facts.

The juvenile complaints against defendant were waived from the Family Part, see N.J.S.A. 2A:4A-26.1, and a grand jury charged him with an armed robbery, N.J.S.A. 2C:15-1, (first robbery) and related weapons offenses committed on April 23, 2013 (counts one through three), and an armed robbery (second robbery) and related offenses committed on April 25, 2013 (counts four through eight).

The State alleged the first robbery took place around 9:00 p.m., after the victim withdrew money from an ATM and was walking back to his disabled car nearby. An African-American male armed with a handgun confronted the victim, made a demand, and the victim surrendered his wallet. The robber

fled. When police responded, the victim provided a description of his assailant, including that he wore a striped shirt.

Two nights later, between approximately 11:00 and 11:30 p.m., the second victim withdrew money from the same ATM as his girlfriend waited in a nearby-parked car. An African-American male armed with a handgun demanded the victim's money, the victim surrendered his wallet and the robber fled. Police responded and the victim provided a description of his assailant. Police saw a group of people approximately one block away, one of whom fit the general description. Upon approaching, one of the individuals, later identified as defendant, fled, throwing a gun over some fencing before he was apprehended.

Shortly thereafter, the second victim and his girlfriend identified defendant during a "show up." While being processed, defendant made several incriminating statements. Police ultimately recovered the gun and the second victim's wallet, which included his identification and ATM card, near the scene. In defendant's pocket was a clip of ammunition that fit the gun. Underneath his hooded sweatshirt, defendant wore a striped shirt.

3

On April 29, police conducted a photographic identification procedure with the first victim. He told police he was nearly certain that a photograph of defendant was that of his assailant.

Defendant moved to suppress the out-of-court identifications and to sever counts one through three from the remaining charges. Following a Wade[1] hearing, at which both victims testified, the judge suppressed the photographic identification made by the first victim, but not the "show up" identification made by the second victim and his girlfriend.[2]

The judge took no testimony during the hearing on defendant's severance motion. Following argument, the judge properly framed the issue as whether evidence of the second robbery would be admitted at a separate trial on the first robbery "and vice versa . . . pursuant to [N.J.R.E.] 404(b)." Applying the four-prong test set out in State v. Cofield, 127 N.J. 328, 338 (1992), the judge found the evidence would be relevant on the material issue of identity regarding the first robbery and denied the motion to sever.

---

[1] United States v. Wade, 388 U.S. 218 (1967).

[2] At the Wade hearing, the first victim acknowledged he identified defendant's photo because of the striped shirt defendant was wearing. The fact none of the other photographs included a man wearing a striped shirt led the judge to suppress the first victim's out-of-court identification.

A-2434-20

At trial, the first victim identified defendant in court as the person who robbed him; no other witness identified defendant as the perpetrator of the first robbery. Further, the victim of the second robbery and his girlfriend identified defendant in court. Numerous police witnesses who chased and apprehended defendant and retrieved the gun and other evidence also identified him in court.

As we noted in our unpublished opinion, at the conclusion of the trial,

> [w]ithout objection, the judge instructed the jury that "the events of April 23[], 2013 cannot be used as evidence regarding the events of April 25[], 2013, and the events of April 25[], 2013 cannot be [used as] evidence regarding the events of April 23[], 2013." The judge reiterated later, "I caution and remind you each date stands and falls on its own merits. April 23[] and April 25[] are separate and distinct counts." Defendant did not ask for, and the judge did not provide, the instructions contained in Model Jury Charges (Criminal), "Proof of Other Crimes, Wrongs, or Acts" (September 12, 2016).
>
> [Floyd, slip op. at 14-15.]

The jury convicted defendant on all counts and the judge imposed an aggregate sentence of twenty-five years' imprisonment with an eighty-five percent period of parole ineligibility under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

On direct appeal, we reversed defendant's convictions on counts one through three, vacated the sentences imposed on those counts and remanded the matter for retrial. Floyd, slip op. at 17-18. However, we affirmed the convictions on the remaining counts. Ibid. Although we determined the trial judge erred in denying the severance motion and the error prejudiced the jury's consideration of the evidence as to counts one through three, we concluded, "given the overwhelming evidence of defendant's guilt on the remaining charges, the error did not deny defendant a fair trial on counts four through eight." Id. at 7. The Supreme Court denied certification. State v. Floyd, 236 N.J. 22 (2018).

II.

Defendant was re-tried and acquitted on counts one through three in 2019. In January 2020, he filed a pro se PCR petition, arguing, in part, that his attorney from his first trial, as well as his appellate counsel, provided ineffective assistance.[3] Defendant also contended he was entitled to additional jail credits. Months later, assigned PCR counsel filed a supplemental brief,

---

[3] To the extent defendant raised additional arguments in his PCR petition which are not the subject of this appeal, we do not address them.

incorporating defendant's pro se arguments and highlighting defendant's ineffective assistance of counsel (IAC) claims.

Judge Joseph Paone heard argument on defendant's petition on February 11, 2021. During the hearing, PCR counsel primarily focused on defendant's IAC contentions, initially arguing defendant's first trial attorney was ineffective because she did not move to "try to keep out any kind of comments that were exchanged in a conversation between" the first and second robbery victims before they testified at the <u>Wade</u> hearing. PCR counsel also asserted trial counsel was ineffective for failing to seek an instruction prohibiting the jury from using evidence from either robbery for propensity purposes. Further, PCR counsel argued: these and other identified errors, when considered cumulatively, served as a basis for overturning defendant's convictions; appellate counsel was ineffective for failing to raise the same errors on direct appeal; and if defendant's convictions were not overturned, he was entitled to an evidentiary hearing to address his claims more fully.

Notably, during the hearing, PCR counsel acknowledged defendant had "raised an issue" about trial counsel's failure to request a "cross-racial instruction" during the first trial, but because a cross-racial instruction was given to the jury at that trial, PCR counsel was "waiv[ing] that issue."

In exploring defendant's IAC claim regarding trial counsel's failure to seek to exclude what the victims discussed between themselves prior to the Wade hearing, Judge Paone queried what would have been "elicited before the jury that may have in some way prejudiced the defendant?" PCR counsel responded, "the fact that [the victims] spoke at all had to have had some influence on . . . their testimonies."

Next, Judge Paone addressed defendant's contention that trial counsel was ineffective for neglecting to ask for a specific jury charge related to propensity. The judge noted this issue was raised on direct appeal and we affirmed defendant's convictions for the second robbery because, although we determined the severance motion was improperly denied, we deemed the evidence against defendant for the second robbery "overwhelming." In response to Judge's Paone's comments, PCR counsel conceded trial counsel's pre-trial severance motion was denied and "certainly, the Appellate Division addressed that issue."

Following argument, Judge Paone rendered a cogent and concise decision from the bench, denying defendant's petition without an evidentiary hearing. Regarding defendant's IAC claims, the judge found defendant failed

to satisfy either prong of the <u>Strickland</u>/<u>Fritz</u>[4] test as to trial or appellate counsel.  The judge also concluded defendant provided "no support" for the argument he was due additional jail credits.  The judge entered a conforming order the same day.

III.

On appeal, defendant raises the following overlapping arguments:

POINT I

> AS DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, HE IS ENTITLED TO POST-CONVICTION RELIEF, OR, IN THE ALTERN[A]TIVE, TO AN EVIDENTIARY HEARING.
>
> (A)   Trial counsel failed to ensure that a specific racial identification related to [the second victim and his girlfriend] was provided to the jury by the trial court.
>
> (B)   Trial counsel failed to request a specific charge related to propensity and prior bad acts.
>
> (C)   Trial counsel failed to move to suppress [the second victim]'s unreliable identification of defendant as it was likely impermissibly influenced by third parties.

---

[4] <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984); <u>State v. Fritz</u>, 105 N.J. 42, 58 (1987).

9

(D) Trial counsel's cumulative errors denied defendant effective legal representation.

(E) As there was a genuine issue of material fact in dispute an evidentiary hearing was required.

POINT II

APPELLATE COUNSEL WAS INEFFECTIVE BY FAILING TO RAISE COGNIZABLE CLAIMS ON DIRECT APPEAL.

POINT III

DEFENDANT IS ENTITLED TO 160 DAYS OF ADDITIONAL JAIL TIME CREDIT.

These arguments are unavailing.

"[W]here the [PCR] court does not hold an evidentiary hearing, we may exercise de novo review over the factual inferences the trial court has drawn from the documentary record." State v. O'Donnell, 435 N.J. Super. 351, 373 (App. Div. 2014) (citation omitted). Also, we review a PCR court's legal conclusions de novo. State v. Harris, 181 N.J. 391, 415-16 (2004) (citing Toll Bros., Inc. v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002)).

When considering IAC claims, "[j]udicial scrutiny of counsel's performance must be highly deferential," and courts "must indulge a strong presumption" that counsel's performance was reasonable. Strickland, 466 U.S. at 689. To succeed on an IAC claim, a defendant first must establish

"counsel's representation fell below an objective standard of reasonableness" and, second, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 687-88, 694; see also Fritz, 105 N.J. at 58. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." State v. Pierre, 223 N.J. 560, 583 (2015) (quoting Strickland, 466 U.S. at 694; Fritz, 105 N.J. at 52). This standard applies to both trial and appellate counsel. State v. Gaither, 396 N.J. Super. 508, 513 (App. Div. 2007) (citing State v. Morrison, 215 N.J. Super. 540, 546 (App. Div. 1987)).

If an issue has been previously raised and decided, the "prior adjudication upon the merits . . . is conclusive whether made in the proceedings resulting in the conviction . . . or in any appeal taken from such proceedings." R. 3:22-5. PCR is not "an opportunity to relitigate matters already decided on the merits." State v. Afanador, 151 N.J. 41, 50 (1997) (citations omitted). Further, Rule 3:22-4 bars a claim if the defendant "could have, but did not, raise the claim in a prior proceeding." State v. Preciose, 129 N.J. 451, 459 (1992). Thus, PCR "is not a substitute for direct appeal." State v. Szemple, 247 N.J. 82, 97 (2021) (citing State v. Jones, 219 N.J. 298, 310 (2014)).

A defendant is not automatically entitled to an evidentiary hearing by simply raising a PCR claim. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999) (citing Preciose, 129 N.J. at 462). An evidentiary hearing is required only when: a defendant establishes a prima facie case in support of PCR; the court determines there are disputed issues of material fact that cannot be resolved by review of the existing record; and the court determines that an evidentiary hearing is required to resolve the claims asserted. State v. Porter, 216 N.J. 343, 354 (2013) (citing R. 3:22-10(b)). To establish a prima facie case of IAC, a defendant must present legally competent evidence rather than "bald assertions." Cummings, 321 N.J. Super. at 170.

Governed by these standards, we agree with Judge Paone that defendant failed to satisfy either prong under the Strickland/Fritz test and was unable to demonstrate a reasonable likelihood his PCR claims would ultimately succeed on the merits. Accordingly, defendant's petition was correctly denied, and he was not entitled to an evidentiary hearing. We add the following comments.

As a threshold matter, we need not address defendant's Point I(A) because at the February 11 hearing, PCR counsel waived defendant's contention about his trial attorney's failure to seek a cross-racial instruction. See State v. Robinson, 200 N.J. 1, 19 (2009) ("Appellate review is not

limitless. The jurisdiction of appellate courts rightly is bounded by the proofs and objections critically explored on the record before the trial court by the parties themselves."). We also observe that even if PCR counsel had not withdrawn this argument, the record reflects when the trial judge charged the jurors in the first trial, he cautioned "[e]yewitness identification evidence must be scrutinized carefully" and "research has shown that there are risks of making mistaken identifications." In discussing the first victim's in-court identification, the judge added, "[r]esearch has shown that people may have greater difficulty in accurately identifying members of a different race. You should consider whether the fact that the witness and the defendant are not of the same race may have influenced the accuracy of the witness's identification." Subsequently, the judge charged the jury about the in-court and out-of-court identifications made by the second victim and his girlfriend. Reminding jurors again that "[e]yewitness identification evidence . . . must be scrutinized carefully," the judge instructed them "the same factors apply . . . that I just read to you. I'm not going to read them to you verbatim all over again. You're going to have the charge in the [j]ury room."

Under these circumstances and given the overall strength of the State's case as to the second robbery, we would be hard-pressed to conclude any

13

failure on trial counsel's part to request that the trial judge fully repeat the cross-racial instruction as to the second victim and his girlfriend prejudiced defendant as envisioned under the second prong of the Strickland/Fritz test.

Defendant next argues under Point I(B) trial counsel was ineffective for failing "to request a specific charge related to propensity and prior bad acts." We are not persuaded.

As we observed in 2018, the trial judge's jury charge regarding propensity and prior bad acts was "inadequate," but we declined to overturn defendant's convictions under counts four through eight, having concluded "[t]he improper admission of evidence of the first robbery did not lead the jury to an unjust result" on the second robbery and the evidence of his guilt on the second robbery was "overwhelming."[5] Given our determinations, we agree with Judge Paone defendant was procedurally barred from raising this issue again in his PCR petition. See Rule 3:22-5 (holding that "[a] prior

---

[5] The full model jury charge on Rule 404(b) evidence is contained in Model Jury Charges (Criminal), "Proof of Other Crimes, Wrongs or Acts" (N.J.R.E. 404(b)) (rev. Sept. 12, 2016), and provides, in part, that jurors "may not use [other crimes, wrongs, or acts] evidence to decide that the defendant has a tendency to commit crimes or he [or she] is a bad person. That is, you may not decide that, just because the defendant has committed other crimes, wrongs or acts, he [or she] must be guilty of the present crime[s]."

adjudication upon the merits of any ground for relief is conclusive" for PCR purposes). But even if we were to consider this issue, given the strength of the State's case as to the second robbery, we are satisfied defendant could not meet the second Strickland/Fritz prong.

Regarding Point I(C), defendant contends trial counsel was ineffective because she "failed to move to suppress [the second victim's] unreliable [in-court] identification of defendant" despite that "it was likely impermissibly influenced by third parties." Defendant theorizes that because the first and second victims purportedly spoke with one another before testifying at the Wade hearing and the second victim's girlfriend was present at the "show up" identification, the second victim's "identification was likely the product of a composite he had formed, in part, from [his girlfriend's] emotional declaration that defendant was the robber at the show-up and conversations that he likely had with [the first victim]." We are not convinced.

As Judge Paone noted, he presided over the Wade hearing before the first trial, and at that hearing, defendant's attorney cross-examined each victim regarding what interactions they had with each other at the courthouse before they testified. The record reflects the first victim testified on cross-examination that he and the second victim spoke "about both [their]

15

A-2434-20

experiences" but that he "didn't say anything specifically – or remember saying anything to [the second victim] about [defendant's] facial features or anything."  And when the <u>Wade</u> hearing continued days later, the second victim denied speaking with the first victim at all about the particulars of the robberies.

After recounting what occurred at the <u>Wade</u> hearing, Judge Paone reminded PCR counsel that he suppressed the first victim's out-of-court identification but found the second victim's "out-of-court identification was admissible based upon . . . the fact . . . his testimony [was] credible."  Thus, Judge Paone found "no additional motions filed by trial counsel would have in any way changed the outcome" and defendant failed to show "how he was prejudiced by a failure of trial counsel to make any additional filing."  In rejecting this IAC claim, the judge concluded, "neither prong of the <u>Strickland</u> test was met."  We perceive no basis to disturb this legal conclusion, given the judge's factual findings are amply supported on the record.

Next, because we agree with Judge Paone that defendant failed to demonstrate trial counsel was ineffective in the specific instances he alleged, defendant's cumulative error argument does not warrant discussion in a written opinion.  <u>R.</u> 2:11-3(e)(2).  Likewise, we find no merit in defendant's

16

argument under Point I(E) that he established a prima facie case of IAC warranting an evidentiary hearing.  Ibid.

Turning to Point II, it is well established "appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by the defendant."  Morrison, 215 N.J. Super. at 549 (citing Jones v. Barnes, 463 U.S. 745 (1983)).  Indeed, "appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."  Smith v. Robbins, 528 U.S. 259, 288 (2000).  "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."  Ibid. (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)).

Here appellate counsel argued on direct appeal:  (1) the State "failed to prove identification beyond a reasonable doubt"; (2) the trial judge's refusal in the first trial to sever the counts pertaining to the two robberies and failure to properly instruct jurors on propensity violated defendant's due process rights and his right to a fair trial; and (3) defendant's sentence was excessive.  Floyd, slip op. at 2-3.  As Judge Paone noted, appellate counsel's efforts persuaded us to overturn defendant's convictions on three counts.  Given appellate counsel's

17

effective advocacy, as well as Judge Paone's proper rejection of the very IAC claims defendant argues appellate counsel should have raised on direct appeal, we find no error in the judge's determination that defendant failed to satisfy the Strickland prongs as to appellate counsel.

Lastly, defendant argues in Point III he is entitled to additional jail credits totaling 169 days.[6]  Specifically, he seeks credits from the time he was arrested on April 25, 2013 for the second robbery to the day before he was sentenced on October 1, 2015.  Based on his calculations, he contends he should have received 908, not 739 days of jail credits.  Again, we disagree.

The determination of a defendant's eligibility for jail credits, which in effect reduces the time to be served on a sentence, is governed by Rule 3:21-8. The Rule provides that a "defendant shall receive credit on the term of a custodial sentence for any time served in custody in jail . . . between arrest and the imposition of sentence."  R. 3:21-8.  But in State v. Black, our Supreme Court held "when a parolee is taken into custody on a parole warrant, the confinement is attributable to the original offense on which the parole was

_____

[6]  Although the heading in defendant's merits brief at Point III refers to his entitlement "to 160 days of additional jail time credit," he makes clear in his brief he is seeking an additional 169 days of jail credits.

granted and not to any offense or offenses committed during the parolee's release." 153 N.J. 438, 461 (1998).

Here, it is undisputed defendant was on juvenile parole at the time of his arrest on April 25, 2013. Because he cites to no authority confirming he is entitled to additional jail credits on the instant offenses and we are unaware of any case law supporting his argument that he should be treated differently than an adult parolee taken into custody on a parole warrant, we discern no error in Judge Paone's denial of defendant's request for additional jail credits.

In sum, we are satisfied Judge Paone correctly concluded defendant's IAC claims as to trial and appellate counsel were either procedurally barred or failed to satisfy both prongs under the Strickland/Fritz test. Accordingly, defendant's PCR petition was appropriately denied and no evidentiary hearing was warranted. Additionally, we discern no error in the judge's determination that defendant was not entitled to any additional jail credits.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2434-20